## Kelli K. Goodrow *vs.* Lane Bryant, Inc.

Suffolk. April 6, 2000. - July 31, 2000.

Present: Abrams, Greaney, Ireland, Spina, & Cowin, JJ.

*Statute,* Construction, Federal preemption. *Administrative Law,* Regulations. *Labor,* Overtime compensation, Damages. *Words,* "Bona fide executive."

A Superior Court judge correctly concluded that a salaried employee was not employed as a "bona fide executive," as that is defined in Federal regulations interpreting 29 U.S.C. § 213(a)(1), and that the employee was not exempt from the overtime provisions of G. L. c. 151, § 1A. [171-173]

Discussion of the calculation of the "regular rate of pay" for salaried employees whose weekly work hours vary. [173-176]

The application of the "fluctuating work week" method of calculating overtime pay for nonexempt salaried employees, described in 29 C.F.R. § 778.114, is permissible under G. L. c. 151, § 1A, and regulations promulgated thereunder, and an employer's use of a standard calculation based on forty hours rather than the actual number of hours worked did not prejudice the employee. [176-177]

This court concluded that where the "fluctuating work week" method is used to calculate overtime there must be a "clear mutual understanding" as defined in 29 C.F.R. § 778.114 between the employer and employee that that method will be used; to the extent that 455 Code Mass. Regs. § 2.02, tenth par., does not require such a "clear mutual understanding," it is preempted by the Federal regulation. [177-178]

In an action brought by an employee against an employer under G. L. c. 151, § 1A, for overtime compensation, nothing in the record supported a finding that the employer intentionally or wilfully violated State law or that it had an "evil motive" or was recklessly indifferent to employees' rights, such as would support an award of treble damages. [178-179]

Civil action commenced in the Superior Court Department on July 7, 1995.

The case was heard by *Allan van Gestel,* J., and a motion to file a late notice of cross-appeal was heard in the Appeals Court by *Kenneth Laurence,* J.

The Supreme Judicial Court granted an application for direct appellate review.

*R. Robert Popeo* (*Kenneth M. Bello* with him) for the defendant.

*Thomas V. Urmy, Jr.* (*Christine E. Morin & Theodore M. Hess-Mahan* with him) for the plaintiff.

The following submitted briefs for amici curiae:

*Thomas E. Shirley & David C. Kurtz* for Retailers Association of Massachusetts & another.

*Loretta M. Smith* for New England Legal Foundation.

SPINA, J. Kelli K. Goodrow (Goodrow) commenced a class action[1] against Lane Bryant, Inc. (Lane Bryant), for failing to pay overtime compensation at the rate of one and one-half times her hourly rate for the hours she worked in excess of forty in any work week, contrary to G. L. c. 151, § 1A. She also sought individually triple damages under G. L. c. 151, § 1B. After a jury-waived trial, a Superior Court judge found for Goodrow and awarded her damages in the amount of $3,773.58,[2] plus interest, costs, and reasonable attorney's fees. Lane Bryant appealed, claiming (1) Goodrow was exempt from the provisions of § 1A because she was a "bona fide executive"; (2) the judge's method of calculating overtime compensation for Goodrow, a salaried employee, was incorrect; and (3) G. L. c. 151, §§ 1A and 1B, are unconstitutionally vague as applied. We granted its application for direct appellate review. The judge further found, as a matter of discretion, that individually Goodrow was not entitled to triple damages. Goodrow appealed, claiming the judge lacked discretion to deny triple damages after finding a violation of § 1A. We granted her application for direct appellate review. We reverse the judgment for Goodrow and affirm the judgment denying punitive damages.

1. *Background facts.* We summarize the facts found by the judge. Lane Bryant operates a nationwide chain of retail stores that sell clothing and related goods to larger women. Goodrow began working at the Lane Bryant store in the Greendale Mall in Worcester on November 9, 1993. After a brief period of training Goodrow was transferred to the Lane Bryant store in Auburn, where she remained until she resigned, on April 10, 1995.

On an average day, two or three employees worked in the Auburn store: a store sales manager, a cosales manager, and a

---

[1]By order dated March 11, 1999, the trial judge had severed and stayed all proceedings on the class action pending the resolution and appeal of Goodrow's individual claim.

[2]A stipulated figure representing single damages.

sales associate. Goodrow's job title was "co-sales manager." Store sales managers and cosales managers were paid on a weekly salary basis. Sales associates, who were generally part-time workers, were paid on an hourly basis. Goodrow never worked less than forty hours per week, and ordinarily worked forty-six to forty-seven hours per week. During holiday seasons, Goodrow worked an additional five to seven hours per week. Her initial salary was $320 per week. On March 6, 1994, Goodrow's pay was raised to $325 per week. On March 12, 1995, her pay was raised again to $342 per week.

Goodrow's daily duties were as follows. She arrived at approximately 9:30 A.M., when she would turn on the cash registers, put cash in the registers, and examine the "register mail." At 10 A.M. the store opened to customers. For the rest of the day she and the other employees performed retail sales work, including such tasks as waiting on and assisting customers, ringing up sales, setting up special promotional sales displays, replacing sold items on shelves, racks, or hangers, and keeping the store neat and presentable. Goodrow's other duties included cleaning bathrooms, putting out trash, and providing on-the-job guidance and assistance to sales associates. At about 12:30 P.M. the part-time sales associate would go home and another cosales manager would arrive and stay until closing while Goodrow remained until 6:30 P.M. When Goodrow was the cosales manager who arrived at 12:30 P.M., she would stay until the store closing process was completed at about 9:30 P.M. The closing process included cleaning up the premises, vacuuming the floor, replacing light bulbs, washing mirrors, dusting, closing the cash registers, putting away the day's receipts, making bank deposits, and locking the store for the night. Whenever Goodrow left the store her pocketbook and bags were checked by another employee pursuant to a company policy designed to minimize employee theft. Cosales managers such as Goodrow did not have authority to hire, fire, or discipline other employees.

During the period Goodrow worked in the Auburn store, the position of store sales manager was left unfilled on two occasions that lasted approximately four and ten weeks, respectively. Goodrow, the cosales manager with seniority on those occasions, assumed some of the responsibilities ordinarily held by the sales manager. Her assumption of those duties was unofficial and resulted in no increase in compensation. During those

two periods the Lane Bryant district manager visited the store more often, sometimes as many as three or four times each week.

Prior to the time of Goodrow's employment cosales managers were paid on a salary basis plus some overtime. Then, in 1991, they were paid only straight salary with no overtime. The United States Department of Labor (DOL) investigated Lane Bryant's overtime payment practices to determine whether they complied with the Federal Fair Labor Standards Act of 1938 (FLSA), 29 U.S.C. §§ 201-219. In November, 1992, one year before Goodrow joined Lane Bryant, the company reached an accord with the DOL. Under the terms of that agreement Lane Bryant was to "pay [its] co-managers on a fluctuating workweek basis" beginning November 15, 1992. That agreement further provided that, "in order to avoid weekly computations and to provide additional compensation, co-managers, in accordance with [Field Operations Handbook] § 32b04b(a),[3] will receive an extra half-time based on their salary divided by 40 hours."

Goodrow testified that, at the time she was hired in 1993, the Lane Bryant district manager who interviewed her told her that she would receive eight dollars per hour, which "averaged out to $320 a week for forty hours," and that, for all hours she worked in excess of forty, she would be paid at half of her hourly rate. On March 15, 1995, Goodrow signed a memorandum explaining the compensation scheme as it applied to her first pay raise. In pertinent part, the memorandum read:

[3]The United States Department of Labor Field Operations Handbook § 32b04b(a) (entitled "Salaried Employees, Irregular hours worked") (1967) provides: "If an employee is given a stipulated salary *with the understanding that it constitutes straight time pay for all hours he works*, and if his hours of work fluctuate from week to week, his regular rate of pay ordinarily will vary from week to week in accordance with the number of hours worked each week. The regular rate, of course, cannot be less than the applicable [minimum wage]. Since straight time compensation has already been paid, such an employee must receive additional [overtime] compensation for each [overtime] hour in a particular [work week] computed at not less than one-half the regular rate obtained by dividing the weekly salary by the number of hours worked in that [work week]. If the employer to avoid weekly computations chooses to pay extra half-time based on the salary divided by 40 hours, such a method is permissible." (Emphasis added.)

This policy, minus the last sentence, was memorialized in 29 C.F.R. § 778.114, entitled "Fixed salary for fluctuating hours," promulgated on January 26, 1968.

"As a Co-Sales Managers [*sic*] ('CSM') of Lane Bryant, you are an Exempt, Salaried associate. This means that you will be paid a weekly salary for hours worked each week. For all hours worked in excess of 40 per week, you will receive a supplemental rate of pay equal to one-half (.5) your regular rate of pay. . . . Please note that any benefits to which you may be entitled (sick, vacation, holiday, etc.) are paid based on a 40-hour week, or 8 hours per day."

The memorandum also included the following example:

| *"Example (Based on 45 hour workweek):* | *Your Personal Calculation*: |
|---|---|
| Base Weekly Salary: | |
| $308.00/week | $325.60/week |
| Supplemental Rate: | |
| $3.85/hour ($308/40 X .5) | $4.07/hour |
| $308.00 X 52 wks = $16,016.00 | $325.60 X 52 = $16,931.20 |
| $3.85 X 52 wks X 5 = $1,001.00 | $4.07 X 52 X 5 = $1,058.20 |
| Annual Target Salary: | |
| $17,017.00 | $17,989.40 |
| | *Your Paycheck Should Show (Gross Pay)*: |
| | Base Weekly Salary |
| | (Regular Pay @ 40 hrs): |
| | $325.60 |
| | Supplemental Pay |
| | (Overtime Pay @ 5hrs): |
| | $20.35." |

Goodrow resigned, voluntarily, on April 10.

2. *"Bona fide executive" exemption.* Lane Bryant argues that Goodrow was exempt from the overtime provisions of G. L. c. 151, § 1A, because she was a "bona fide executive" within the meaning of G. L. c. 151, § 1A (3), especially during the periods of time when she temporarily assumed the responsibilities of a store manager. Lane Bryant contends that, because neither the statute nor the corresponding regulations define "bona fide executive," and absent any Massachusetts appellate decision construing the term, we should look to the FLSA and

the Federal regulations to determine whether Goodrow was an exempt employee. Lane Bryant further argues that employees who have limited control or discretion in the workplace and who spend the majority of their time on nonexempt tasks may nevertheless be considered exempt as bona fide executives under the FLSA,[4] and should receive similar treatment under G. L. c. 151, § 1A (3). Generally, the party claiming an exemption from the provisions of a statute has the burden to show that it is entitled to the exemption. Cf. *New England Legal Found.* v. *Boston*, 423 Mass. 602, 609 (1996) (burden on taxpayer claiming exemption to prove entitlement); *Burnham* v. *Mark IV Homes, Inc.*, 387 Mass. 575, 580 (1982) (burden on party claiming exemption under G. L. c. 93A to prove entitlement).

Where a "statute does not effectively define [terms] we have said that the Legislature should be supposed to have adopted the common meaning of the word, as assisted by a consideration of the historical origins of the enactment." *Jancey* v. *School Comm. of Everett*, 421 Mass. 482, 490 (1995), *S.C.*, 427 Mass. 603 (1998), quoting *Westinghouse Broadcasting Co.* v. *Commissioner of Revenue*, 382 Mass. 354, 357, appeal dismissed, 452 U.S. 933 (1981). The legislative history of G. L. c. 151, § 1A, provides no guidance as to the meaning of the term "bona fide executive." See St. 1960, c. 813; 1960 Senate Doc. No. 1; 1960 House Doc. Nos. 1348, 2414, 3100; 1959 House Doc. No. 2666. In such instances we may look to interpretations of analogous Federal statutes for guidance, see *Tate* v. *Department of Mental Health*, 419 Mass. 356, 361 (1995), but we are not bound by them. See *Blare* v. *Husky Injection Molding Sys. Boston, Inc.*, 419 Mass. 437, 441 (1995); *College-Town, Div. of Interco, Inc.* v. *Massachusetts Comm'n Against Discrimination*, 400 Mass. 156, 163 (1987).

There is also the matter of preemption. Title 29 U.S.C. § 218(a) makes clear that the wage and hour standards set forth in the FLSA are the floor, and that "the FLSA does not preempt any existing state law that establishes a higher minimum wage or a shorter workweek than the federal statute." *Cosme Nieves*

---

[4]See, e.g., *Donovan* v. *Burger King Corp.*, 672 F.2d 221, 227 (1st Cir. 1982) (person in charge of store is primarily manager, even though spending majority of time on nonexempt work and making few significant decisions); *Sturm* v. *TOC Retail, Inc.*, 864 F. Supp. 1346, 1352 (M.D. Ga. 1994) (employee deemed exempt who performed nonexempt as well as exempt work); *Rau* v. *Darling's Drug Store, Inc.*, 388 F. Supp. 877, 881 (W.D. Pa. 1975) (employee, sole sales clerk, in charge of drug store exempt even though she did significant nonexempt work).

v. *Deshler*, 786 F.2d 445, 452 (1st Cir.), cert. denied, 479 U.S. 824 (1986). Conversely, a State law may be preempted by the FLSA if it conflicts with the FLSA, or if it is impossible for a third party to comply with both the FLSA and the State law. See *Commonwealth Elec. Co.* v. *Department of Pub. Utils.*, 397 Mass. 361, 375-376 (1986), cert. denied, 481 U.S. 1036 (1987).

Title 29 U.S.C. § 213(a)(1) provides: "[S]ection 207 of this title shall not apply with respect to . . . any employee employed in a bona fide executive, administrative, or professional capacity." This provision is nearly identical to G. L. c. 151, § 1A (3). However, unlike its State counterpart, it is illuminated by interpretive regulations defining and delimiting the terms "executive, administrative, or professional." See 29 C.F.R. §§ 541.0 et seq. (1999). To determine whether an employee is an "executive," 29 C.F.R. § 541.1[5] establishes a "long test" for employees who earn between $155 and $250 a week, and 29 C.F.R. § 541.119 establishes a "short test" for those earning more than $250 a week.[6] Goodrow was not a bona fide execu-

---

[5]Title 29 C.F.R. § 541.1 provides: "The term 'employee employed in a bona fide executive . . . capacity' . . . shall mean any employee:

"(a) Whose primary duty consists of the management of the enterprise in which he is employed or of a customarily recognized department [or] subdivision thereof; and

"(b) Who customarily and regularly directs the work of two or more other employees therein; and

"(c) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring or firing and as to the advancement and promotion or any other change of status of other employees will be given particular weight; and

"(d) Who customarily and regularly exercises discretionary powers; and

"(e) Who does not devote more than 20 percent, or, in the case of an employee of a retail or service establishment who does not devote as much as 40 percent, of his hours of work in the workweek to activities which are not directly and closely related to the performance of the work described in paragraphs (a) through (d) of this section . . . and

"(f) Who is compensated for his services on a salary basis at a rate of not less than $155 per week . . . [p]rovided, [t]hat an employee who is compensated on a salary basis at a rate of not less than $250 per week . . . and whose primary duty consists of the management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof, and includes the customary and regular direction of the work of two or more other employees therein, shall be deemed to meet all the requirements of this section."

[6]Title 29 C.F.R. § 541.119 provides: "[Section] 541.1 contains an upset or

tive under either test. Her primary duty at Lane Bryant did not consist of "management of the enterprise" or a subdivision thereof, nor did it involve determining Lane Bryant's over-all course or policies. See *Bratt* v. *County of Los Angeles*, 912 F.2d 1066, 1070 (9th Cir. 1990), cert. denied, 498 U.S. 1086 (1991); 29 C.F.R. § 541.1(a). Despite her temporary assumption of managerial duties at the Auburn store, Goodrow did not spend more than fifty per cent of her time at Lane Bryant performing managerial duties. "As a 'rule of thumb,' for tasks to constitute an employee's primary duty, 'the employee must devote more than fifty percent of [her] time to these duties.' " *West* v. *Anne Arundel County*, 137 F.3d 752, 763 (4th Cir.), cert. denied, 525 U.S. 1048 (1998), quoting *Shockley* v. *Newport News*, 997 F.2d 18, 26 (4th Cir. 1993). See 29 C.F.R. §§ 541.103, 541.206(b). At best, Goodrow customarily and regularly directed the work of only one part-time sales associate at the store, not the two or more required by 29 C.F.R. § 541.1(b) and (f). Goodrow had no authority or influence over any decision to hire, fire, promote or demote any other employee in the store. See 29 C.F.R. § 541.1(c). She did not exercise any discretionary powers in the execution of her job because all decisions she made concerning the business of the store were subject to the approval of upper level managers. See 29 C.F.R. § 541.1(d). Finally, Goodrow spent well over forty per cent of her time at Lane Bryant engaged in nonmanagerial activity. See 29 C.F.R. § 541.1(e). She was primarily occupied with carrying out the day-to-day affairs of the retail business.

Nor do we think that Goodrow was a bona fide executive within the common understanding of those words. Webster's Third New Int'l Dictionary 794 (1993) defines "executive" as "one who holds a position of administrative or managerial responsibility in a business or other organization." "Administrative" pertains to "the management of public affairs [or] the principles, practices, and rationalized techniques employed in

high salary proviso for managerial employees who are compensated on a salary basis at a rate of not less than $250 per week . . . . Such a highly paid employee is deemed to meet all the requirements in paragraphs (a) through (f) of § 541.1 if the employee's primary duty consists of the management of the enterprise . . . or of a customarily recognized department or subdivision thereof and includes the customary and regular direction of the work of two or more other employees therein. If an employee qualifies for exemption under this proviso, it is not necessary to test that employee's qualifications in detail under paragraphs (a) through (f) of § 541.1 of this Part."

achieving the objectives or aims of an organization." *Id.* at 28. To "manage" is "to control and direct." *Id.* at 1372. In a related context, the Legislature defined a managerial employee as one who "participate[s] to a substantial degree in formulating or determining policy." G. L. c. 150E, § 1. "Bona fide" is defined as "in good faith without fraud or deceit. . . . [synonym] authentic." Webster's Third New Int'l Dictionary, *supra* at 250.

Although her title was "co-manager," Goodrow did not hold a position of managerial responsibility within the Lane Bryant organization. She did not have any significant control or discretion over the principles, practices, and strategies applied by Lane Bryant in achieving its business objectives, and she did not participate to any degree whatsoever in formulating or determining Lane Bryant's policies. She performed the duties of the sales manager on two occasions for a total of only fourteen weeks, but they were not her regular duties, she received no pay differential for the extra work, and the district manager could be seen as the actual temporary manager in light of her stepped up visits to the store. A manager in name does not a manager make. Goodrow's duties and her modest level of compensation do not comport with what is commonly understood as an "executive" position. The common understanding of the term, which we apply in the absence of any Massachusetts statutory or regulatory definition, is at least as beneficial to the employee as the Federal definition. Consequently, there is no preemption of our gloss. The judge correctly concluded that Goodrow was not employed as a bona fide executive at Lane Bryant and thus was not exempt from the overtime provisions of G. L. c. 151, § 1A.

3. *Calculation of overtime.* Lane Bryant argues that the judge erred in calculating Goodrow's overtime pay because the method he used to define her regular rate of pay was inconsistent with the applicable Massachusetts regulation, 455 Code Mass. Regs. § 2.02, tenth par. (1993), as well as the Federal regulations. Lane Bryant further argues that because G. L. c. 151, § 1A, is largely based on 29 U.S.C. § 207(a)(1), and application of the "fluctuating workweek" method of calculating overtime as described in 29 C.F.R. § 778.114 is an acceptable means of complying with Federal law, its application also must be permissible under Massachusetts law.

The judge concluded that G. L. c. 151, § 1A, requires that all employees receive overtime at the rate of one and one-half

times the hourly rate they earn in a forty-hour week. His interpretation is more beneficial to the employee than the method of payment permitted under the Federal regulations, but it ignores the Massachusetts regulations.

General Laws c. 151, § 1A, provides that "no employer in the commonwealth shall employ any of his employees . . . for a work week longer than forty hours, unless such employee receives compensation for his employment in excess of forty hours at a rate not less than one and one half times the regular rate at which he is employed." The corresponding regulation in effect during Goodrow's employment provided that the basic minimum overtime rate was "1 ½ times the employee's regular rate of pay." 455 Code Mass. Regs. § 2.03(1) (1993). The term "regular rate of pay," however, is defined neither in the statute nor in the regulation.

Title 455 Code Mass. Regs. § 2.02[7] defines "[r]egular [h]ourly [w]age rate" as "the amount that the employee is regularly paid for each hour of work. When an employee is paid on a piece work basis, salary, or any basis other than an hourly rate, the regular hourly rate shall be determined by dividing the total hours worked during the week into the employee's total earnings." This regulation recognizes that a salaried employee's regular hourly rate[8] may fluctuate on a weekly basis depending on the number of hours worked, and is inversely proportional to the number of hours worked. The nonexempt salaried employee is still entitled under 455 Code Mass. Regs. § 2.03(1) (1993) to receive one and one-half times that rate for overtime hours worked, but that requirement is satisfied by paying the employee an additional fifty percent of the regular hourly rate for the overtime hours worked. This is so because the

---

[7]In subsequent versions of the regulation, "[r]egular [h]ourly [w]age rate" was changed to "[r]egular [h]ourly [r]ate," and except for the period between October 3, 1997, and December 11, 1998 (see note 8, *infra*), which is not applicable here, it retained the same basic definition. Compare 455 Code Mass. Regs. § 2.01 (1997) (regular hourly rate determined by dividing total weekly earnings by forty hours), with 455 Code Mass. Regs. § 2.01 (1998) (regular hourly rate determined by dividing total hours worked during week into total weekly earnings); 455 Code Mass. Regs. § 2.01 (1999) (same); and 455 Code Mass. Regs. § 2.01 (2000) (same).

[8]The term "regular rate" as used in G. L. c. 151, § 1A, and the terms "regular hourly wage rate" and "regular hourly rate" as used in 455 Code Mass. Regs. § 2.02, tenth par. (1993), are functionally synonymous. Their use depends on the type of compensation an employee receives.

employee's salary is considered to include "straight time" for all hours worked, including the overtime hours. Had this not been the case the regulation would have provided that the regular hourly rate be determined by dividing weekly salary by forty hours. The check on this method of payment is found in the same regulation, which provides that "[r]egardless of the basis used, whether time rate, commission basis or piece rate, the employee shall be paid not less than the applicable minimum wage each week." 455 Code Mass. Regs. § 2.02. We must determine whether this method of calculating overtime for a nonexempt salaried employee is at least as beneficial to the employee as what she would receive under the FLSA.

Title 29 U.S.C. § 207(a)(1), which is nearly identical to G. L. c. 151, § 1A, provides that "no employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." Four years after Congress enacted the FLSA, the Supreme Court construed the term "regular rate" as "[w]age divided by hours. . . ." *Overnight Motor Transp. Co.* v. *Missel*, 316 U.S. 572, 580 n.16 (1942). Three years later, the Supreme Court further explained that the regular rate of pay is "the hourly rate actually paid the employee for the normal, non-overtime workweek for which he is employed." *Walling* v. *Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419, 424 (1945). In 1968, the DOL promulgated several interpretive regulations governing the calculation of overtime compensation for several types of employees.[9]

Under 29 C.F.R. § 778.109 (2000) the "regular rate" of pay is a rate of pay per hour. The hourly rate for employees paid on an hourly basis is the "regular rate," and overtime compensation is one and one-half times the hourly rate multiplied by the number of hours worked in excess of forty during the week. 29 C.F.R. § 778.110 (2000). For employees paid on a salary basis, the "regular hourly rate of pay, on which time and a half must be paid, is computed by dividing the salary by the number of

---

[9]The regulations have remained largely unchanged. Compare 33 Fed. Reg. 986 (1968), with 29 C.F.R. §§ 778.100-778.122 (2000).

hours which the salary is intended to compensate."[10] 29 C.F.R. § 778.113 (2000).

The regular rate of pay for salaried employees whose hourly work week varies, and who have an understanding with their employers that their fixed salary constitutes straight-time pay for whatever hours they are called on to work in a work week is calculated by dividing the regular weekly pay by the total number of hours worked in the week. 29 C.F.R. § 778.114 (2000). The overtime rate of pay in this scenario is calculated by multiplying one-half the regular rate of pay by the number of hours worked in excess of forty hours.[11] *Id.* This is the so-called "fluctuating work week" method of calculating overtime. It falls heavily on those at the lower rungs of the economic ladder, but its use has been approved by the Supreme Court in *Overnight Motor Transp. Co.* v. *Missel, supra* at 580. It is the same as the method of calculating overtime for nonexempt salaried employees under 455 Code Mass. Regs. § 2.02 and 455 Code Mass. Regs. § 2.03(1). See *Valerio* v. *Putnam Assocs., Inc.*, 173 F.3d 35, 39-40 (1st Cir. 1999). The Commissioner of Labor and Industries has authority to provide lower income salaried employees with a more favorable method of calculating overtime than the method used here.

Lane Bryant calculated Goodrow's overtime under the

---

[10]For example, "[i]f an employee is hired at a salary of $182.70 and if it is understood that this salary is compensation for a regular workweek of 35 hours, the employee's regular rate of pay is $182.70 divided by 35 hours, or $5.22 an hour, and when he works overtime he is entitled to receive $5.22 for each of the first 40 hours and $7.83 (one and one-half times $5.22) for each hour thereafter. If an employee is hired at a salary of $220.80 for a 40-hour week his regular rate is $5.52 an hour." 29 C.F.R. § 778.113(a).

[11]For example, "an employee whose hours of work do not customarily follow a regular schedule but vary from week to week, whose overtime work is never in excess of 50 hours in a workweek, and whose salary of $250 a week is paid with the understanding that it constitutes his compensation, except for overtime premiums, for whatever hours are worked in the workweek. If during the course of 4 weeks this employee works 40, 44, 50, and 48 hours, his regular hourly rate of pay in each of these weeks is approximately $6.25, $5.68, $5, and $5.21, respectively. Since the employee has already received straight-time compensation on a salary basis for all hours worked, only additional half-time pay is due. For the first week the employee is entitled to be paid $250; for the second week $261.36 ($250 plus 4 hours at $2.84, or 40 hours at $5.68 plus 4 hours at $8.52); for the third week $275 ($250 plus 10 hours at $2.50, or 40 hours at $5 plus 10 hours at $7.50); for the fourth week approximately $270.88 ($250 plus 8 hours at $2.61 or 40 hours at $5.21 plus 8 hours at $7.82)." 29 C.F.R. § 778.114(b).

fluctuating work week method, but it used a denominator of forty hours rather than the actual number of hours worked in a given week. The DOL approved Lane Bryant's use of this method to calculate overtime for cosales managers. This method is permitted under the DOL Field Operations Handbook, although it is not included in either the Federal or the Massachusetts regulations. See note 4, *infra*. It affords employers an easier means of calculation because it uses the same denominator in the calculation every week. The trade-off, in the view of DOL, is that it affords more money to the employee. Because this method resulted in more overtime pay than Goodrow was entitled to receive under either the State or Federal regulations, she has not been prejudiced.

The trial judge concluded that even if G. L. c. 151 permits the fluctuating work week method of calculating overtime, 29 C.F.R. § 778.114 requires that there be a "clear mutual understanding" of the parties that any overtime compensation will be calculated by that method. Section 778.114 contains no such requirement. It requires only that the parties have a "clear mutual understanding . . . that the fixed salary is compensation (apart from overtime premiums) for the hours worked each week, whatever their number, rather than for working 40 hours or some other fixed weekly work period." See *Valerio* v. *Putnam Assocs., Inc.*, *supra* at 40. Goodrow testified that she always understood how she would be paid, and that the March 15, 1995, written memorandum expresses the same method by which she was paid from the first day of her employment. The absence during seventeen months of employment of any indication that Goodrow did not understand how she would be paid is evidence of a clear mutual understanding concerning how she was paid. *Id.* at 39. Her understanding as to how her overtime compensation would be calculated need not have been exhaustive, see *id.* at 40, but here it was. The March 15 memorandum made clear not only that Goodrow's salary covered all hours worked each week, but also included examples of how overtime would be calculated. In that respect Goodrow received more detail than was required. *Id.* As matter of law, based on Goodrow's testimony and the terms of the March 15 memorandum, Goodrow and Lane Bryant had a "clear mutual understanding" that Goodrow's salary would serve as compensation, apart from overtime, for all hours worked each week. To the extent that 455 Code Mass. Regs. § 2.02, tenth par., does not require a

"clear mutual understanding," it is preempted by 29 C.F.R. § 778.114.

4. *Vagueness.* Having determined that the Massachusetts statute and regulations permit a fluctuating workweek method of calculating overtime for nonexempt salaried employees, we need not address Lane Bryant's argument that G. L. c. 151, § 1A, is unconstitutionally vague.

5. *Treble damages.* Because we hold that Lane Bryant did not violate G. L. c. 151, § 1A, Goodrow's cross appeal from the denial of her claim of treble damages is moot. However, the issue is likely to arise in the class action, trial of which has been severed from the trial of Goodrow's individual claim, so we express our opinion on the matter.

General Laws c. 151, § 1B, provides in relevant part that, "if any person is paid by an employer less than such overtime rate of compensation [required by § 1A], such person may recover in a civil action three times the full amount of such overtime rate of compensation less any amount actually paid to him or her by the employer." Goodrow contends that, in light of the fact that the Legislature declined to require a showing of intent or wilfulness with respect to the treble damages provision, the plain meaning of the word "may" in the context of this sentence is that an employee illegally deprived of overtime compensation is permitted but not required to bring a civil action in which, if successful, she is entitled to recover treble damages. The word "may," argues Goodrow, therefore relates to a plaintiff's option to initiate a civil action for damages rather than to the amount of damages recoverable under the statute. We disagree.

Multiple damages such as the treble damages at issue here "are 'essentially punitive in nature.' " *Fontaine* v. *Ebtec Corp.,* 415 Mass. 309, 322 (1993), quoting *McEvoy Travel Bur., Inc.* v. *Norton Co.,* 408 Mass. 704, 717 (1990). See *Kansallis Fin. Ltd.* v. *Fern,* 421 Mass. 659, 672 (1996). They are allowed only when expressly authorized by statute, *Flesner* v. *Technical Communications Corp.,* 410 Mass. 805, 813 (1991), and are ordinarily applied by the Legislature "against those defendants with a higher degree of culpability than that sufficient to ground simple liability." See *Kansallis Fin. Ltd., supra.* Punitive damages may be awarded for conduct that is "outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others." *Dartt* v. *Browning-Ferris Indus., Inc. (Mass.),* 427 Mass. 1, 17a (1998), quoting Restatement (Second) of Torts

§ 908(2) (1979). In the instant case, the judge found that, in light of the uncertainty of the state of the law in Massachusetts and the fact that Lane Bryant relied on the advice of counsel and followed law and procedures apparently sanctioned elsewhere, there was "no legal or equitable basis" on which to impose multiple damages. We agree. We find nothing in the record to support a finding that Lane Bryant intentionally or wilfully violated Massachusetts law or that its conduct was "evil in motive" or showed a "reckless indifference to the rights of others," and we therefore decline to award treble damages. To do otherwise absent evidence of heightened culpability would very likely constitute an "arbitrary or irrational deprivation[] of property," *TXO Prod. Corp.* v. *Alliance Resources Corp.*, 509 U.S. 443 (1993) (Kennedy, J., concurring), and thus would be constitutionally impermissible. There was no error.

The judgment in favor of Goodrow is reversed and judgment for Lane Bryant is to enter therein. The judgment denying punitive damages is affirmed.

*So ordered.*