**Thomas W. CASH, Plaintiff,**

v.

**CYCLE CRAFT COMPANY, INC.
d/b/a Harley–Davidson/Buell
of Boston, Defendant.**

**Civil Action No. 05–12216–WGY.**

United States District Court,
D. Massachusetts.

April 6, 2007.

Justine H. Brousseau, Kimball Brousseau LLP, Boston, MA, for Plaintiff.

Seth H. Salinger, Newton, MA, James Rehnquist, Goodwin Procter, LLP, Boston, MA, Samantha L. Schreiber, Goodwin Proctor LLP, New York City, for Defendant.

### MEMORANDUM AND ORDER

YOUNG, District Judge.

## I. INTRODUCTION

This case arises out of a claim by the plaintiff Thomas W. Cash ("Cash") against his employer, the defendant Cycle–Craft Company, Incorporated d/b/a Harley–Davidson/Buell of Boston ("Boston Harley") for failure to pay overtime at the proper rate pursuant to Massachusetts and federal law.

On November 4, 2005, Cash initiated this lawsuit asserting violations of both the federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207(a), and Massachusetts General Laws, chapter 151, sections 1A and 1B. Cash Complaint [Doc. No. 1] ("Compl.") at ¶¶ 11–19. Boston Harley answered the complaint on January 6, 2006. Boston Harley Answer [Doc. No. 5] ("Answer").

On March 2, 2007, Boston Harley moved for summary judgment [Doc. No. 18], and submitted a supporting memorandum [Doc. No. 24] ("Def.Mem.") as well as a statement of material facts [Doc. No. 19] ("Def. 56.1 Stat.").

Cash responded on March 16, 2007, with a memorandum in opposition [Doc. No. 28] ("Pl. Opp'n Mem.") and a counter-statement of material facts [Doc. No. 29] ("Pl. 56.1 C–Stat.").

This Court held oral arguments on this motion on March 29, 2007. After careful consideration of the memoranda, record, and arguments made by counsel, this Court reaches the following disposition.

### A. Background Facts

In the late fall of 2003, Cash was shopping at Boston Harley when he was intro-

duced to the General Manager, Ron Buchbaum ("Buchbaum"). Pl. 56.1 C–Stat. ¶ 6b. This encounter, in addition to another one in January 2004, led Buchbaum to offer Cash a job at Boston Harley. *Id.* ¶¶ 6c–6d. Buchbaum wanted Cash to create a new position to solve customer service problems, and let Cash draft a job description for the position. *Id.* ¶¶ 6d–6e. Cash and his girlfriend, Linda Perkins ("Perkins"), drafted the job description and Buchbaum asked him to make a few changes. *Id.* ¶¶ 6f–6g. After a few discussions between Buchbaum and Cash, Buchbaum offered him the position of "New Purchase/Customer Relations Manager" and offered $60,000 in salary and health insurance and vacation after one year. *Id.* ¶¶ 6g, 9b. Cash accepted, and he started work at Boston Harley on April 26, 2004. *Id.*

Cash earned $1,153.85 per week during his employment with Boston Harley. Compl. ¶ 5. He received this same salary each week regardless of how many hours he worked except for the pay period ending on August 28, 2004, when he was paid $769.24 and for the period ending on September 4, 2004, when he was paid $961.55. Pl. 56.1 C–Stat. ¶ 5.

On April 8, 2005, Boston Harley terminated Cash's employment. Compl. ¶ 8.

### B. Federal Jurisdiction

This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 arising out of the federal Fair Labor Standards Act of 1939. Jurisdiction is proper over the ancillary state law claim pursuant to supplemental jurisdiction under 28 U.S.C. § 1367.

## II. DISCUSSION

### A. Standard of Review

Summary judgment is warranted if, after reviewing the facts in the light most favorable to the non-moving party, no gen-uine issues of material fact remain and the moving party is entitled to judgment as matter of law. Fed.R.Civ.P. 56(c); *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. A "genuine" issue of fact is one that a reasonable jury, on the record before the court, could resolve in favor of either party. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. A fact is material when it "might affect the outcome of the suit under the governing law." *Hayes v. Douglas Dynamics, Inc.,* 8 F.3d 88, 90 (1st Cir.1993) (citing *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505).

In making its determination, this Court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505. The movant has the initial burden of production, which it can meet either by offering evidence to disprove an element of the plaintiff's case or by demonstrating an "absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the movant has met its burden, the non-moving party must "go beyond the pleadings, and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a material issue for trial." *Id.* at 323, 106 S.Ct. 2548 (internal quotation marks omitted).

### B. Fair Labor Standards Act

The overtime provisions of the FLSA establish the general rule that employees must be compensated at a rate not less than one and one-half times their regular rate for all overtime hours. 29 U.S.C. § 207(a)(1). Overtime is defined as any employment in excess of 40 hours in a single workweek. *Id.*

■ An employer is exempted from this general rule for employees employed in a "bona fide executive, administrative, or professional capacity." *Id.* § 213(a)(1). The employer in an FLSA action bears the burden of establishing that an employee meets such an exemption. *Reich v. Newspapers of New England, Inc.*, 44 F.3d 1060, 1070 (1st Cir.1995). "[E]xemptions are to be 'narrowly construed against the employers seeking to assert them and their application limited to those establishments plainly and unmistakably within their terms and spirit.'" *Id.* (citing *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392, 80 S.Ct. 453, 4 L.Ed.2d 393 (1960)).

■ This exemption to the general FLSA requirement is further defined by regulations promulgated by the Secretary of Labor.[1] Specifically, the regulations instruct that the job title of an employee is not enough to satisfy an exemption. 29 C.F.R. § 541.2. Instead, the analysis will focus on whether the employee meets the salary and primary duty requirements of the exemption. *Id.*

Boston Harley argues that Cash fits within the "administrative" exemption of section 213(a)(1). *See* Def. Mem. at 7–8. Code of Federal Regulations, chapter 29, section 541.200 defines this exemption as covering any employee: (1) who receives a "salary" of at least $455 per week; (2) "[w]hose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers"; and (3) "[w]hose primary duty includes the exercise of discretion and independent judgment with respects to matters of significance." 29 C.F.R.

§ 541.200(a)(1)-(3). The Court addresses these points seriatim.

**1. Salary**

■ The salary requirement for an administrative employee contains two aspects. *See* 29 C.F.R. § 541.200.

The first asks only whether the employee earned over the specified $455 per week. *Id.* § 541.200(a)(1). It is uncontested that Cash received a salary of $1,153.85 per week, thus satisfying this threshold inquiry. Compl. ¶ 5; Answer ¶ 5. Even where Cash asserts his salary was "docked," it still overcomes this minimal requirement.

The second requirement is that Cash must receive this amount on a "salary basis." 29 C.F.R. § 541.200(a)(1). The term "salary basis" is further defined in 29 C.F.R. § 541.602 as existing where "the employee regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of the employee's compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed."

Cash argues that this definition is not satisfied because he failed to receive his full $1,153.85 per week on two occasions— for the consecutive pay periods ending August 28, 2004, when he was paid $769.24, and September 4, 2004, when he was paid $961.55. Pl. Opp'n Mem. at 5; Pl. 56.1 C–Stat. ¶ 5. Cash refers to the receipt of this amounts as being "docked." *Id.* ¶ 10c.

Cash fails to raise a genuine issue from this alleged dispute. *See Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. Cash only

---

1. "The Secretary's regulations are promulgated pursuant to an express delegation of legislative authority and must be given controlling weight unless they are found to be arbitrary, capricious, or contrary to the statute." *Reich*, 44 F.3d at 1070 (citing *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 843–44, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984))

began work on Thursday, August 26, 2004. *See* Pl. 56.1 C–Stat. ¶ 5. The first pay period that Cash alleges was "not salary" occurred only three work days later. He received the seemingly large amount of $769.24 for those three days. The next pay period ended on September 4, 2004, where he received the seemingly low amount of $961.55. Cash is correct that his pay stubs for those two weeks did not mirror his weekly salary; but, when added together, they equal $1,730.79, which, is within one cent of exactly 1.5 times Cash's stated salary of $1,153.85 per week. The aggregate sum that he received corresponds with the week and a half of work that he actually completed over those two weeks.

After September 4, 2004, Cash never received a salary less than $1,153.85 per week. As a result, no reasonable jury could resolve the issue of whether Cash received a salary in favor of Cash.

**2. Primary Duties Related to Management or Business Operations**

■ Boston Harley must also satisfy the regulatory requirement that the "type of work performed by [Cash] ... [was] directly related to assisting with the running or servicing of the business." 29 C.F.R. § 541.201(a). This is in contrast to a position that involves "working on a manufacturing production line or selling a product in a retail or service establishment." *Id.* In addition, an employee will satisfy this factor if the primary duty of his job is "related to the management or general business operations of the employer's customers." *Id.* § 541.201(c).

Boston Harley carries the burden of proving that no genuine issue of material fact exists as to whether Cash satisfies this regulatory definition. *See Reich,* 44 F.3d at 1070. The factual support, with all inferences taken in the light most favorable

to Cash, unequivocally supports Boston Harley's position.

Cash contests the validity of one of the two job descriptions submitted by Boston Harley. Def. 56.1 Stat., Ex. A, attach. A at 1 ("Disputed Job Description"). As Cash is the nonmoving party, this Court ignores the contested job description. Cash does not, however, dispute the validity of the second job description titled "New Purchase/Customer Relations Manager." *Id.,* Ex. A, attach. A at 2 ("Undisputed Job Description"). Though the Disputed Job Description goes into greater detail on the major duties and responsibilities, the Undisputed Job Description is sufficient to support Boston Harley's position. *See id.* The Undisputed Job Description states that the employee must have "the ability to develop and implement a[sic] overall Customer Service strategic plan," "[t]he ability to develop a clear business plan to support organizational changes ... that provide[s] efficiency and improve[s] customer service delivery," and, *inter alia,* "[i]dentify and expeditiously resolve delivery problems." *Id.* The required qualifications included five years of both customer service management and as a supervisor. *Id.* Buchbaum, in his affidavit, affirmed these responsibilities and qualifications. Def. 56.1 Stat., Ex. A ¶¶ 4–7.

Buchbaum also asserts that Cash managed three persons during his tenure: Michael Grana ("Grana"), David Jordan, and Steve Cowie, all of whom held a position responsible for cleaning and prepping motorcycles for the showroom and customer deliveries. *Id.* ¶ 13. Cash asserts that he never managed any of the three employees listed, who he says worked for Mike Sienkiewicz ("Sienkiewicz") Pl. 56.1 C–Stat. ¶¶ 14f, 15c. He does, however, admit that he would, at times, direct them to get a particular bike ready for a particular cus-

tomer. *Id.* ¶ 23. Grana, in his affidavit, states that Cash was his supervisor. Def. 56.1 Stat., Ex. C, ¶¶ 3–4. As a result, the evidence providing by Boston Harley and the admissions by Cash himself prove that Cash exerted supervisory or management control over those employees, even if he was not formally their superior.

The level of Cash's salary also constitutes evidence of managerial duties because it was greater than or equal to that of any of the other managers, except for Buchbaum. Def. 56.1 Stat., Ex. A ¶ 10. Cash fails to rebut this fact with any evidence as to why he received a $60,000 salary—a salary commensurate with other managers—yet did not exercise managerial responsibilities.

Finally, Cash attended management meetings. Pl. 56.1 C–Stat. ¶ 14c. Cash does not dispute that he attended such meetings, but simply states that his role was minimal (e.g., reporting figures, status of deliveries). *Id.* This is directly contradicted by Sienkiewicz, who held an exempt position as "Service Manager." In his affidavit, Sienkiewicz states that Cash attended these meetings in his role as "Customer Relations Manager." Def. 56.1 Stat., Ex. B ¶ 4 ("Sienkiewicz Affidavit"). Boston Harley also includes a photograph described as one of "managers and supervisors." *Id.,* Ex. D, attach. B. Cash appears in this photograph at the extreme left. *See id.* Cash fails to provide a reasonable explanation for his presence at managerial meetings and provides no explanation for this photograph.

The majority of the facts that Cash puts forward to support his case comes from his own affidavit. He describes his duties and responsibilities as working with various Boston Harley departments to make sure that the bike that the customer ordered would be "outfitted, accessorized, and delivered according to the purchase order." Pl. 56.1 C–Stat. ¶ 16a (relying solely on his affidavit).

He asserts he had no knowledge of the Disputed Job Description, but provides no reason or explanation for its existence and content. *Id.,* Ex. F [Doc. No. 31] ("Cash Affidavit") ¶ 3. He claims not to have managed any employees, *id.* ¶ 21, but admits to directing them to get a particular bike ready at particular times, *id.* ¶ 23. Except for reference to four times where he actually participated in the delivery of bikes, Cash's affidavit provides no actual facts that would assist in understanding his primary duties or would refute the documentary evidence proffered by Boston Harley. *See id.* ¶ 20. In fact, contrary to Cash's position, his affidavit and its descriptions of his job responsibilities actually support a finding that his duties meet the exempt employee standard.

The only documentary evidence that Cash proffers to assist his argument is a national organizational chart that fails to detail where his newly-created position (or locally-created position) falls in the organization. Pl. 56.1 C–Stat., Ex. B at 1. The absence of Cash's position, however, does not prove his point because there is *no* reference to his position at all. Instead, Cash appears to argue, with no support, that his job description more naturally fits a description for "Detailer." Pl. 56.1 C–Stat. ¶ 16h. This is an argument bereft of factual support, gerrymandered to fit within the organization chart.[2]

In sum, Cash seeks to say that his job involved the "production" of motorcycles. Pl. Opp'n Mem. at 6. This argument seeks to fit within the statutory protection for manual labor and blue collar workers.

---

**2.** On the contrary, Cash's assertion that he directed "detailer[s]" on occasion appears in direct contrast to this assertion that he did not play a managerial role. Cash Affidavit ¶ 23.

This is an unfounded position and one at odds with Cash's own description of his job offer and his own drafting of his job description, which centers on high-level customer management.

The evidence Cash provides is minimal and fails to raise a genuine issue of material fact as to the duties and responsibilities that he exercised in his position properly labeled Customer Service Manager. This conclusion is proper in light of the evidence presented by Boston Harley that demonstrates that Cash's duties and responsibilities were managerial and significantly related to customer operations. *See* Cash Affidavit ¶ 6 (stating that Buchbaum offered him a position to take care of his customer service problems).

The evidence produced by Boston Harley demonstrates the exercise of duties and responsibilities similar to the examples provided by the federal regulations. *See* 29 C.F.R. § 541.203. Specifically, they are similar to the example that states that an exempt employee under this exception is one where: "[a]n employee ... leads a team of other employees assigned to complete major projects for the employer (such as purchasing, selling or closing all or part of the business, ... or designing and implementing productivity improvements)...." *Id.* § 541.203(c). Notably, this regulation also states that the exception is met "even if the employee does not have direct supervisory responsibility over the other employees on the team." *Id.*

### 3. Discretion and Independent Judgment

■ The final regulatory requirement that Boston Harley must satisfy is a showing that the employee's "primary duty includes the exercise of discretion and independent judgment with respect to matters of experience." 29 C.F.R. § 541.200(a)(3). This is further amplified by 29 C.F.R. § 541.202, which explains that such discretion generally "involves the comparison and the evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered." *Id.* § 541.202(a). Such judgment and discretion generally means the ability to affect operations without prior approval. Such an employee is not excluded from this exception just because his decisions are reviewed at a higher level. *See id.* § 541.202(b)-(c).

This factor basically looks to the same evidence of duties and responsibilities as described above and then asks a qualitative question as to the role that the employee played in exercising those responsibilities.

Here, facts taken solely from Cash's affidavit support the conclusion that he is an exempt employee. Cash would inspect work orders and, if they were not satisfactory, instruct the Service Manager concerning what needed to be done. Cash Affidavit ¶ 12. He was the primary contact person with customers to make sure they were happy with their order. *Id.* He attended management meetings. *Id.* ¶ 14. If he needed a certain bike ready at a certain time, he had the authority to direct the Service Manager or tell the Detailers directly to get a particular bike ready. *See id.* ¶ 23.

These facts alone support a finding that no genuine issue of material fact exists as to whether Cash's position involved discretion. Cash opposes such a conclusion by stating "[h]e did not direct anyone as to how to do their job. He simply let the various departments know what needed to be done, leaving it to the knowledge and skill of the people in the departments as to how to do the work." Pl. Opp'n Mem. at 10. This admission itself, however, supports the conclusion that he exercised significant discretion over the course of conduct of the business. The act of dele-

gating responsibility for the tactical accomplishment of a strategic goal reinforces and does not detract from a finding of exempt status.

In sum, no reasonable jury could find from the undisputed record that Boston Harley ran afoul of the FLSA by paying Cash as a salaried, exempt employee.

### C. Massachusetts Minimum Fair Wages Act

█ The Massachusetts statute governing overtime pay is nearly identical to the FLSA. It states, in relevant part, that "[e]xcept as otherwise provided in this section, no employer in the commonwealth shall employ any of his employees in an occupation ... for a work week longer than forty hours, unless such employee receives compensation ... in excess of forty hours at a rate not less than one and one half times the regular rate at which he is employed." Mass. Gen. Laws ch. 151, § 1A.

The statute also provides for an exception where an employee is employed "as a bona fide executive, or administrative or professional person ... earning more than eighty dollars per week." Id. § 1A(3).

The analogous nature of the two statutes was recognized in Valerio v. Putnam Associates, Inc., 173 F.3d 35, 40 (1st Cir. 1999) ("The basic overtime provision of the Massachusetts statute is essentially identical to the FLSA."); see also McLaughlin v. Liberty Mut. Ins. Co., 224 F.R.D. 295, 296 (D.Mass.2004) (Cohen, M.J.) (referring to the filing of both claims as "[r]iding the same horse."). Such an interpretation has been validated by the Supreme Judicial Court of Massachusetts. Swift v. AutoZone, Inc., 441 Mass. 443, 447, 806 N.E.2d 95 (2004) ("[T]he overtime provisions under State law were intended to be 'essentially identical' to Federal law ...." ) (citing Valerio, 173 F.3d at 40); see also Goodrow v. Lane Bryant, Inc., 432 Mass.

165, 171, 732 N.E.2d 289 (2000) (stating that the FLSA and the Massachusetts state are "nearly identical").

Both parties agree in their memoranda that a determination of the FLSA claim will equal a determination of the chapter 151 claim. Pl. Opp'n Mem. at 14; Def. Mem. at 13–14. The only difference in the statutes is that damages under chapter 151 have the potential of being greater than under the FLSA. Pl. Opp'n Mem. at 14 n. 6.

As a result, the failure by Cash to raise a triable issue as to the FLSA claim similarly undermines and defeats his state law claim.

### III. CONCLUSION

This Court takes great pains to avoid allowing motions for summary judgment should any conceivable genuine issue of material fact exist that requires a jury determination. See Arthur R. Miller, The Pretrial Rush to Judgment: Are the "Litigation Explosion," "Liability Crisis," and Efficiency Clichés Eroding Our Day in Court and Jury Trial Commitments?, 78 N.Y.U. L.Rev. 982, 1082–93 (2003). In this case, a searching and exhaustive review of the record fails to reveal one. As a result, and based on the above analysis, Boston Harley's Motion for Summary Judgment [Doc. No. 18] is ALLOWED. Judgement shall enter for Boston Harley.

SO ORDERED.