AHADUL QUAZI *vs.* BARNSTABLE COUNTY.

No. 06-P-486.

Worcester. October 16, 2007. - December 3, 2007.

Present: LENK, SMITH, & VUONO, JJ.

*County,* Employees. *Employment,* Retaliation. *Labor,* Overtime compensation.

In a civil action brought by an employee alleging retaliatory discharge in
violation of G. L. c. 149, § 185, the judge erred in granting summary judg-
ment in favor of the employer on the ground that the employee had failed
to provide the employer with prior written notice of his claim, where the
plaintiff's claim was brought only under G. L. c. 149, § 185(*b*)(3), a
subsection of the statute that was not subject to a written notice requirement.
[783-784]

In a civil action brought by an employee alleging that his former employer
had failed to pay overtime wages due to the employee on the date of his
discharge, in violation of G. L. c. 149, § 148, the judge properly granted
summary judgment in favor of the employer, where the employee, as a
"bona fide executive" or "professional person," was exempt from the
provisions of the overtime pay statute and therefore was owed no overtime
compensation on his last day of work. [784-786]

CIVIL ACTION commenced in the Superior Court Department on
September 8, 2004.

The case was heard by *James H. Wexler,* J., sitting by special
assignment, on a motion for summary judgment.

*Paul R. Chomko* for the plaintiff.

*Daniel G. Skrip* for the defendant.

VUONO, J. At issue in this appeal is whether summary judg-
ment was correctly entered in favor of Barnstable County (county)
thereby dismissing Ahadul Quazi's two-count complaint alleging
retaliatory discharge, in violation of G. L. c. 149, § 185 (count I),
and failure to pay overtime wages, in violation of G. L. c. 149,
§§ 148 and 150 (count II). For the reasons set forth below, the
summary judgment is reversed in part and affirmed in part.

1. *Facts.* Viewed in the light most favorable to Quazi, the nonmoving party, the materials in the record established the following. See *Carleton* v. *Commonwealth*, 447 Mass. 791, 793 (2006).

In May, 2003, George Heufelder, the director of the county's department of health and the environment (department), hired Quazi to serve as the director of the county laboratory (laboratory). Set at grade STP-7, step 3, the position was full-time, with an annual salary of $56,545.34. Heufelder was Quazi's immediate supervisor. When Quazi was hired, he was not informed that his position had a mandatory six-month probationary period.

The laboratory was responsible for testing water quality throughout the county. The laboratory personnel looked for specific inorganic and organic compounds in water samples. If these compounds were detected, the laboratory personnel would quantify the levels.

Quazi, who holds undergraduate and graduate degrees in chemistry, had extensive experience with inorganic and organic molecular analysis as well as the maintenance of diversified instruments and computer systems. He was also familiar with both mandatory State and Federal environmental methods and protocols. The technical aspects of his job, Quazi indicated, were in the "[s]pecialized field of chemistry."

When Quazi first started working, the laboratory lacked discipline and structure; Quazi claimed that nobody had listened to Heufelder or to the previous laboratory director. Brought in to make changes, Quazi claimed that during the course of his employment, he worked continuously to improve these problems as well as the work habits of the employees.

As the director of the laboratory, Quazi was responsible for managing the "paramount" technical tasks such as buying and running the instruments and troubleshooting. Quazi also managed seven employees within the laboratory. According to Quazi, Heufelder "massively interfered" with Quazi's position, including Quazi's hiring authority, because of Heufelder's desire to "bring in people of his own choice." When Quazi was working, Heufelder would come up to the laboratory twenty to twenty-five times per day. Quazi mentioned Heufelder's "too frequent[]" visits "to the [county] commission [and the county] administrator."

In June, 2003, Heufelder told Quazi to keep track of all his overtime hours. In July, 2003, Quazi first learned about the probationary period. At that time, he asked the secretary for a copy of the employee handbook.

While serving as the director of the department, Heufelder, according to Quazi, continued to manage the Alternative Septic Systems Test Center (center), a private customer that owed a significant amount of money to the laboratory in unpaid bills. The center's statement of account dated September 18, 2003, showed that the center owed the laboratory $19,044.50. When Quazi realized that the laboratory management report of the same date showed that a credit of $8,658.51 had been given to the center on July 8, 2002, he asked Heufelder for an explanation. Heufelder never provided Quazi with an appropriate explanation for the credit.

Several times between June and September, 2003, Heufelder asked Quazi to credit the center's account in order to bring the balance owed to zero. Believing that Heufelder's requests were illegal, Quazi refused to alter the data in the laboratory's computer system. When Quazi refused to comply, Heufelder hired Elena Hughes, a friend of Heufelder's secretary, to perform the task. Heufelder did not advertise or post the position as required by the employee handbook.

In October, 2003, Quazi reported the illegal request and other alleged misbehavior by Heufelder to Margaret Downey, the assistant county administrator. Downey stated to Quazi that she did not know whether the center was a county account. Although Downey promised Quazi that she would speak with Heufelder and get back to Quazi, she never did. In November and December, 2003, Quazi also spoke with Mark Zielinski, the county administrator, about these issues, to no avail.

On November 7, 2003, Heufelder asked Downey to extend Quazi's probationary period for another three months. Soon thereafter, at Heufelder's request, Quazi met with Kathleen Gilligan, a social worker, as part of an evaluation of personnel issues within the laboratory. On December 8, 2003, Quazi was terminated by Heufelder and Zielinski.

In January, 2004, Quazi sent Zielinski a letter asking to be paid for "[u]nofficial [o]vertime [h]ours." After receiving no

response, Quazi filed a complaint about the unpaid overtime with the Attorney General's office. In August, 2004, Quazi was given leave to pursue a civil claim against the county for the unpaid compensation. Quazi's two-count complaint followed.

2. *Discussion.* a. *Retaliatory discharge in violation of G. L. c. 149, § 185, the whistleblower statute.* The judge dismissed count I of Quazi's complaint on the ground that Quazi had failed to provide the county with prior written notice of his claim. Although the judge was correct that no such notice was given, the dismissal was in error.

Quazi's action was brought only under G. L. c. 149, § 185(*b*)(3), which, unlike G. L. c. 149, § 185(*b*)(1), is not subject to the written notice requirement of G. L. c. 149, § 185(*c*)(1).[1,2] See

---

[1]Our conclusion is based on the statutory language, which reads in relevant part as follows:

"(b) An employer shall not take any retaliatory action against an employee because the employee does any of the following:

"(1) Discloses, or threatens to disclose to a supervisor or to a public body an activity, policy or practice of the employer . . . that the employee reasonably believes is in violation of a law, or a rule or regulation promulgated pursuant to law . . .

". . .

"(3) Objects to, or refuses to participate in any activity, policy or practice which the employee reasonably believes is in violation of a law, or a rule or regulation promulgated pursuant to law . . . .

"(c)(1) Except as provided in paragraph (2), *the protection against retaliatory action provided by subsection (b)(1) shall not apply* to an employee who makes a disclosure to a public body unless the employee has brought the activity, policy or practice in violation of a law, or a rule or regulation promulgated pursuant to law . . . to the attention of a supervisor of the employee by written notice and has afforded the employer a reasonable opportunity to correct the activity, policy or practice.

"(2) An employee is not required to comply with paragraph (1) if he: (A) is reasonably certain that the activity, policy or practice is known to one or more supervisors of the employer and the situation is emergency in nature; (B) reasonably fears physical harm as a result of the disclosure provided; or (C) makes the disclosure to a public body as defined in clause (B) or (D) of the definition for 'public body' in subsection (a) for the purpose of providing evidence of what the employee reasonably believes to be a crime." (Emphasis added.)

G. L. c. 149, § 185, inserted by St. 1993, c. 471.

[2]In the trial court and the initial briefs on appeal, the question litigated by

*Mailloux* v. *Littleton*, 473 F. Supp. 2d 177, 184-185 (D. Mass. 2007). By its terms, § 185(*c*)(1) relates only to an employee's protection under § 185(*b*)(1). Quazi's complaint specifically alleges that his employer extended his probationary period and ultimately fired him because he refused to participate in Heufelder's illegal acts, i.e., falsely crediting an overdue account of one of the laboratory's private customers. As such, Quazi's claim falls squarely within § 185(*b*)(3). Quazi does not make any § 185(*b*)(1) allegation that he suffered retaliation because of his disclosures to superiors (or to a public body).[3] Therefore, this case is distinguishable on its facts from *Dirrane* v. *Brookline Police Dept.*, 315 F.3d 65, 73 (1st Cir. 2002), upon which the county relies. *Dirrane* essentially held that a police officer's filing of his whistleblower claim in court constituted "a disclosure" to a "public body" within the meaning of § 185(*c*)(1), thereby triggering the written notice requirement. *Ibid.* The officer's claim in *Dirrane*, however, alleged violations only of § 185(*b*)(1) (retaliation due to officer's reporting to superiors of abuses in police force), not § 185(*b*)(3).[4] See *Dirrane* v. *Brookline Police Dept.*, *supra* at 67-68, 72. Because no written notice was required of Quazi under the circumstances, so much of the summary judgment as dismisses count I of the complaint must be reversed.

   b. *Failure to pay wages in violation of G. L. c. 149, § 148,*

the parties was whether Quazi met any of the exceptions under G. L. c. 149, § 185(*c*)(2), to the § 185(*c*)(1) requirement of written notice. Thus, Quazi, the county, and the motion judge all assumed that Quazi's claim was subject to § 185(*c*)(1). We have chosen in our discretion to examine and rule on that assumption; although we hesitate to consider any matter not previously raised, here the issue has been fully briefed by the parties (in supplemental memoranda of law) and argued orally, the question is unanswered in the Commonwealth, the matter is likely to arise again, and as it concerns the whistleblower statute, it carries public importance. See *Cottam* v. *CVS Pharmacy*, 436 Mass. 316, 320 (2002), and cases cited.

   [3]We find no merit in the county's argument that by bringing his § 185(*b*)(3) claim to the court (a public body), Quazi necessarily "channel[ed]" that claim through § 185(*b*)(1), thus making § 185(*c*)(1) applicable. The county's contention ignores the relevant language of § 185(*b*): "An employer shall not take any retaliatory action against an employee *because* the employee . . . (1) discloses . . . to a public body . . ." (emphasis added). Quazi alleges § 185(*b*)(3) retaliation that preceded, and did not result from, his court filing.

   [4]We thus have no occasion to opine on the correctness of the *Dirrane* court's reading of § 185(*c*)(1).

*the weekly payment of wages statute.* An employer violates the weekly payment of wages statute by failing to pay an employee all wages due on the date of his discharge. See G. L. c. 149, § 148. Here, Quazi claimed that the county violated the statute by failing to pay him for a significant amount of overtime wages. We agree with the judge that as a matter of law, there was no violation of the statute.

Under the overtime pay statute, an employer must pay an employee at least time and one-half for any hours worked in excess of forty in the course of one week. See G. L. c. 151, § 1A; *Goodrow* v. *Lane Bryant, Inc.*, 432 Mass. 165, 174 (2000). Twenty categories of employees, however, are expressly exempted from the provisions of the overtime pay statute. See G. L. c. 151, § 1A(1)-(20).

As herein relevant, the overtime pay statute does not apply to any person employed "as a bona fide executive, or administrative or professional person or qualified trainee for such position earning more than eighty dollars per week." G. L. c. 151, § 1A(3), as appearing in St. 1961, c. 431. The Legislature provided no further clarification regarding the meanings of these terms. See *Goodrow* v. *Lane Bryant, Inc.*, 432 Mass. at 170. The Supreme Judicial Court, however, has ruled that in interpreting the State statute, the courts should look for guidance to analogous Federal law and to the common meaning of these words.[5] See *id.* at 170-173.

Here, Quazi's high-level job position, comfortable grade of salary, and job duties established his exempt status as a "bona fide executive, or administrative or professional person." See *id.* at 171-173, and 29 C.F.R. §§ 541.0 et seq. (2003), the interpretative regulations promulgated under the Federal Fair Labor Standards Act of 1938.

As the county laboratory director, Quazi's primary duties were divided between his "paramount" technical functions and his managerial tasks. The water analysis process, which Quazi oversaw, required advanced knowledge in a field of science or

[5]The Supreme Judicial Court recognized that 29 U.S.C. § 213(a)(1), the cognate exemption under the Federal Fair Labor Standards Act of 1938, was "nearly identical" to § 1A(3). *Goodrow* v. *Lane Bryant, Inc.*, 432 Mass. at 171.

learning customarily acquired by a prolonged course of special-
ized intellectual instruction. See 29 C.F.R. §§ 541.3(a)(1),
541.301 (2003) (learned professions); *Reich* v. *Newspapers of
New England, Inc.*, 44 F.3d 1060, 1070, 1077-1078 (1st Cir.
1995).

Quazi's managerial tasks included purchasing and maintain-
ing laboratory equipment, troubleshooting, directing the work of
seven employees, and improving the over-all structure and
discipline of the laboratory, a policy-making task involving a
significant level of discretion.[6] See *Goodrow* v. *Lane Bryant,
Inc.*, 432 Mass. at 172-173. It matters not that there was no
evidence in the record whether Quazi performed his "profes-
sional" technical tasks or his "executive" managerial tasks
more frequently.[7] Both categories of tasks were covered by the
exemption specified in § 1A(3).

In sum, Quazi was employed as a "bona fide executive" or a
"professional person" and was, thus, exempt from the overtime
provisions of § 1A. Contrast *Goodrow* v. *Lane Bryant, Inc.*,
432 Mass. at 172-173. As such, no overtime compensation was
due him on his last day of work. Accordingly, the judge properly
dismissed count II of the complaint, Quazi's claim under the
weekly payment of wages statute.[8]

4. *Conclusion.* So much of the judgment as dismisses count I
of the complaint is reversed, and the judgment is otherwise
affirmed.

*So ordered.*

---

[6]To the extent that Quazi argues in his brief that he could not be considered
a bona fide executive because he had no power to hire or fire employees as
required by 29 C.F.R. § 541.1(c) (2003), see *Goodrow* v. *Lane Bryant, Inc.*,
432 Mass. at 171 n.5, Quazi mischaracterizes his deposition testimony. Although
he first denied that he had such authority, he subsequently explained that as
the laboratory director, he was in fact given the official authority to hire and
fire employees with the involvement of the county.

[7]By his own account of his job description, Quazi spent little time on non-
exempt tasks. Contrast *Goodrow* v. *Lane Bryant, Inc.*, 432 Mass. at 166-167,
172-173.

[8]Quazi's passing suggestion in his brief that as a State employee he was
entitled to overtime pay under G. L. c. 149, § 30B, was not developed. We
deem it waived. See *Jordan* v. *Superintendent, Mass. Correctional Inst.,
Cedar Junction*, 53 Mass. App. Ct. 584, 587 n.6 (2002).