Ford, Daniel A., J.
This case arises from a wage and overtime dispute. The plaintiff, Christopher Graceffa, brought this three-count complaint against the defendants, Mary Stokes Waller and Harvey Waller, containing claims for nonpayment of wages in violation of G.L.c. 149, §148 (Count 1); nonpayment of overtime in violation of G.L.c. 151, §§lAand IB (Count 2); and breach of contract (Count 3). The defendants now move for summary judgment on all claims.
BACKGROUND
The following relevant facts are undisputed and viewed in the light most favorable to the nonmoving party. The defendants own Orleton Farm, a private, non-commercial horse stable located on the defendants’ residential premises in Stockbridge, Mas *100 sachusetts. The defendants employed the plaintiff at the farm from 1999 until 2005, and again from June 2011 to December 2014. In 2011, the plaintiff was hired as a stable hand, but in 2012 was promoted to stable manager. There was never a written employment contract between the parties.
From 2011 through 2014, the plaintiffs compensation increased from a rate of $18 per hour, to $20 per hour, to $21 per hour, and ultimately to $25 per hour, making him the highest paid employee in the stable. The plaintiff did not keep a record of the hours he worked, and he was consistently paid on the basis of forty hours per week. His weekly pay was neither increased nor decreased depending on the number of hours he actually worked. In the course of the plaintiffs employment as a stable hand, his duties included mucking and picking stalls, cleaning harnesses, and grooming, bathing, feeding, and watering the horses and ponies. After the plaintiffs promotion to stable manager, he was assigned additional duties that included, among other things, supervision of stable hands, teaching and training employees how to safely harness horses, preparing a carriage for driving, and maintaining the horses when they were unhitched to a carriage. As stable manager, the plaintiff established schedules, assigned tasks, and apportioned work for the stable hands. He also established and implemented rules such as requiring that all stable employees obtain his approval before switching shifts or taking days off for personal time. He determined the equipment the stable hands needed to perform their duties and decided whéther stable hands needed to work longer hours than originally scheduled. In addition, the plaintiff heard and addressed employee complaints.
DISCUSSION
Summary judgment is appropriate when, viewing the evidence in the light most favorable to the non-moving party, all material facts have been established and the moving party is entitled to judgment as a matter of law. Cabot Corp. v. AVX Corp., 448 Mass. 629, 636-37 (2007); Mass.R.Civ.P. 56(c). “[T]hemoving party must establish that there are no genuine issues of material fact, and that the nonmoving party has no reasonable expectation of proving an essential element of its case.” Miller v. Mooney, 431 Mass. 57, 60 (2000).
The defendants argue that no overtime is owed to the plaintiff because his employment was exempt from overtime pay. Specifically, the defendants argue that, because of the nature of the plaintiffs duties while in their employ, he should properly be classified as either an “executive” or “administrative” person, and as such is exempt from the Minimum Fair Wage Act, pursuant to G.L.c. 151, §1A(3). In his opposition, the plaintiff asserts that he was a domestic worker, and argues that the executive and administrative exemptions should not and do not apply to such workers. Alternatively, the plaintiff argues that, at the very least, a genuine issue of material fact exists as to whether his employment at the farm fell into these exempt categories of G.L.c. 151, §1A(3).
A. G.L.c. 149, §190 — DOMESTIC WORKERS BILL OF RIGHTS
General Laws c. 149, §190(a), defines a “domestic worker” in relevant part: “ ‘Domestic worker,’ an individual or employee who is paid by an employer to perform work of a domestic nature within a household including, but not limited to: (i) housekeeping; (ii) house cleaning; (iii) home management; (iv) nanny services; (v) caretaking of individuals in the home, including sick, convalescing and elderly individuals; (vi) laundering; (vii) cooking; (viii) home companion services; and (ix) other household services for members of households or their guests in private homes . . .” Section 190(c) of chapter 149, provides: “When a domestic worker who does not reside on the employer’s premises is on duty for less than 24 consecutive hours, the employer shall pay the domestic worker for all hours as working time under chapter 151 and regulations promulgated under said chapter 151.”
The problem with the plaintiffs argument is that G.L.c. 149, §190(a), as amended through St. 2015, c. 10, §39, did not take effect until April 1, 2015. The plaintiff left his position with the defendants in 2014, and his complaint alleges that the defendants wrongfully failed to pay wages and overtime from 2011 through 2014. There is no indication that the legislature intended G.L.c. 149, §190 to apply retroactively, meaning that it is simply inapplicable to the alleged violations in this case. Even assuming, arguendo, that G.L.c. 149, §190, should be applied retroactively, the plaintiffs argument is still unpersuasive. He cites no case law to support his proposition that employment as a stable hand or stable manager qualifies him as a domestic worker. Moreover, the plain language of G.L.c. 149, §190(a), does not support his claim that he falls within the definition of “domestic worker.” See Monell v. Boston Pads, LLC, 471 Mass. 566, 574-75 (2015) (“The general and familiar rule is that a statute must be interpreted according to the intent of the Legislature ascertained from all its words construed by the ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished”). Section 190(a) uses the phrase “domestic nature” and “within a household” and lists jobs such as housekeeping, house cleaning, nanny services, laundering, caretak-ing of sick and elderly individuals, and cooking. The common characteristics that these positions share are taking care of persons who reside in the home and performing tasks that a person living in the home would normally have to perform. The plaintiffs employment as both a stable hand and stable manager is not remotely similar to that type of work. The plaintiffs responsibility was to manage the stable, *101 take care of horses and ponies located on the defendants’ property, and to supervise other employees who did the same. There is no evidence in the summary judgment record that these duties included caring for the defendants or required him to enter the defendants’ home to assist them in household chores. Therefore, I conclude that the plaintiff does not fall •within the definition of “domestic worker,” as set forth in G.L.c. 149, § 190(a).
B. G.L.c. 151, §§1A and IB-MINIMUM FAIR WAGES ACT
“Under the overtime pay statute, an employer must pay an employee at least time and one-half for any hours worked in excess of forty in the course of one week. See G.L.c. 151, §1A . . .” Quazi v. Barnstable County, 70 Mass.App.Ct. 780, 785 (2007) (citations omitted). “[T]he overtime pay statute does not apply to any person employed ‘as a bona fide executive, or administrative or professional person or qualified trainee for such position earning more than eighty dollars per week.’ . . . The Legislature provided no further clarification regarding the meanings of these terms . . . The Supreme Judicial Court, however, has ruled that in interpreting the State statute, the courts should look for guidance to analogous Federal law and to the common meaning of these words.” Id. Indeed, in Goodrow v. Lane Bryant, Inc., 432 Mass. 165, 171 (2000), the Court pointed out that the applicable provisions of the Federal Fair Labor Standards Act (“FLSA”), 29 U.S.C. §§201-09, are “nearly identical” to those of G.L.c. 151, §1A(3). See also 454 Code Mass. Regs. §27.03(3) (‘The terms ‘bonafide executive, administrative or professional person’ in G.L.c. 151, §1A(3)... shall have the same meaning as set forth in 29 C.F.R. Part 541”).
“The employer bears the burden of demonstrating that an employee falls within an . . . exemption . . . Exemptions are to be narrowly construed against the employers seeking to assert them and their application limited to those establishments plainly and unmistakably within their terms and spirit... How an employee spends his or her time at work is a question of fact, but whether the particular activities subject the employee to an exemption from . . . overtime requirements is a question of law.” Crowe v. Examworks, Inc., 136 F.Sup.3d 16, 27 (D.Mass. 2015) (citations omitted; internal quotation marks omitted).
1. Executive Exemption
“The test to determine whether an employee falls under the executive exemption has four elements. First, the employee must be ‘(c)ompensated on a salary basis at a rate of not less than $455 per week;’ second, the ‘primary duty’ of the employee must be ‘management of the enterprise in which the employee is employed;’ third, the employee must ‘customarily and regularly direct! ] the work of two or more other employees;’ and the fourth element is that the employee ‘has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.’ 29 C.F.R. §541.100.” Rooney v. Town of Groton, 577 F.Sup.2d 513, 523 (D.Mass. 2008).
In the present case, I conclude that the executive exemption pursuant to G.L.c. 151, §1A(3), applies. Since June 2011, the plaintiff was paid no less than $800 per week. The fact that, for bookkeeping purposes, the plaintiff was paid at an hourly rate is of no consequence because he was paid the same amount every week, regardless of the number of hours he actually worked. See id. at 524 (compensation on salary basis when “(t]he employee’s compensation not be subject to reduction because of variations in the quality or quantity of the work performed” [internal quotation marks omitted]); 29 C.F.R. §541.602 (“An employee will be considered to be paid on a ‘salary basis’ within the meaning of these regulations if the employee regularly receives each pay period ... a predetermined amount constituting all or part of the employee’s compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed”). Thus, the first element of the test is satisfied.
As to the second element, there is no question that the plaintiffs primary duty from 2012 to 2014 was management of the stable. Although the plaintiff performed nonexempt work, such as cleaning stalls and grooming the horses, the plaintiffs primary duties were managerial in nature.[2] It is undisputed that the plaintiff trained and supervised the stable hands. He established schedules and rules. He handled stable employee complaints. He aggregated and reported to the defendants the hours the other stable employees worked. He made decisions on the needs of the stable. His salary was the highest of the stable employees and he was not supervised by any other stable employee. Finally, the defendants typically adhered to the plaintiffs recommendations as to hiring, firing, and wage increases for stable employees. In his complaint to the Office of the Attorney General for non-payment of wages, the plaintiff described his position with the defendants as “stable manager.” Exh. S in Joint Appendix of Exhibits. When asked during his deposition why he did so, he replied, “Because I managed the stable.” Exh. H, page 33. For all these reasons, the second element is satisfied.[3]
As to the third element, it is undisputed that the plaintiff customarily and regularly directed the work of two or more other employees. He scheduled the shifts of other workers and planned and directed the work of as many as fourteen people during his time as stable manager. He addressed employee complaints and made judgments about which employees should handle specific tasks. There is no question that the third element is satisfied.
*102 The fourth element is satisfied as well. An exempt executive employee has the authority to hire and fire employees or to make recommendations on hiring and firing decisions that are given particular weight. See 29 C.F.R. §541.100(a). During his deposition testimony, the plaintiff acknowledged that he interviewed a job applicant named Ryan Parker, made judgments about whether he would be an effective employee, and hired him. See Exh. H, page 112-13. The deposition transcript is replete with other examples of employees who were interviewed, hired and trained by the plaintiff. See Exh. H, pages 121-73. Although the defendants may have had the ultimate hiring authority, it is abundantly clear that they typically followed the plaintiffs recommendations. It appears that they routinely followed his recommendations as to firing employees as well. For example, the defendant Mary Waller testified during her deposition that when the plaintiff informed her that he intended to terminate an employee named Shelby Roger, she replied: “If you don’t want her working here, then I agree.” Exh. A, page 39-40. There may have been one occasion on which the plaintiffs recommendations were not followed, but “(i]t is not necessary for the exempt employee to play a role in every single hire, fire or promotion.” Rooney v. Town of Groton, 577 F.Sup.2d at 531-32. The summary judgment record establishes that the plaintiffs recommendations with respect to hiring and firing were given particular weight.
Accordingly, since all four elements of the test have been satisfied, I rule that the plaintiff was exempt from overtime under the executive exemption.
2. Administrative Exemption
Three elements must be shown to establish that an employee is an administrative person. “First, the employee must be ‘[cjompensated on a salary or fee basis at a rate of not less than $455 per week’; second, the ‘primary duty’ of the employee must be ‘the performance of office or non-manual work directly related to the management or general business operations of the employer’; and third, the employee’s ‘primary duty’ must ‘include! 1 the exercise of discretion and independent judgment with respect to matters of significance.’ 29 C.F.R. §541.200(a)(l)-(3).”Rooney, 577 F.Sup.2d at 532.
The summary judgment record shows that even if the plaintiff was not an exempt executive employee, he was nevertheless an exempt administrative employee. As previously set forth, the first element has been met because the plaintiff was compensated with the functional equivalent of a salary of not less than $455 per week. See id. (“The first element in proving applicability of the administrative exemption . . . mirrors the standard in the executive exemption”). Also as previously discussed, the plaintiffs primary duly was directly related to assisting with the running of the defendants’ stable. See id. at 533 (‘The primary duty requirement under the administrative exemption is also similar to the primary duly requirement under the executive exemption in that the ‘major emphasis’ in determining an employee’s primary duty should be on the ‘job as a whole.’ 29 C.F.R. §541.700(a)”). He, among other things, trained and supervised stable employees, scheduled work and assignments for stable employees, heard and addressed stable employee complaints, collected stable employee work hours, and assisted in hiring and firing stable employees. All of these responsibilities are directly related to the management of the stable as well as assisting in the operation of the stable. It is worth noting that during his deposition, the plaintiff testified that when the previous stable manager, Kerry Wrenn, left that position, “I assumed more of the administrative stuff that I guess she was doing.” Exh. H, page 295. Finally, the plaintiff exercised discretion and independent judgment on significant responsibilities in the operation of the stable.[4] Although the defendants owned the stable and had the ultimate authority over stable affairs, they relied upon the plaintiff to perform his primary administrative duties as described above. Therefore, the plaintiff falls into the administrative exemption from overtime pursuant to G.L.c. 151, §1A.
3. Plaintiffs Promotion to Stable Manager
The plaintiff claims that there is a factual dispute as to exactly when he became the stable manager. He argues that it was not until January of 2013, when he received a significant pay raise, that he assumed the duties of manager, and therefore that he is entitled to overtime pay for services performed as a stable hand prior to 2013.1 find his argument to be unpersuasive. As previously set forth, the plaintiff admitted in his deposition that when Kerry Wrenn, the former stable manager, left her position in January of 2012, he immediately assumed her administrative duties. In his complaint to the Attorney General, he stated that he was hired as the stable manager; and specified the period of the alleged violation as beginning on June 3, 2011 and continuing through December 11,2014. See Exh. S. He made no distinction between the hours he worked before and after January of 2013; he instead claimed that he was the stable manager for the entire time he worked for the defendants after June 3, 2011. The summary judgment record makes it clear that the plaintiff began acting as the stable manager in January of 2012, if not before. The fact that he did not receive a raise in pay until 2013 (as a result of his “hard work,” as he asserted in his complaint to the Attorney General) does not change the result.
G.L.c. 151, §20A, allows a private right of action only for violations that occur within three years prior to the date the employee files a complaint with the Attorney General alleging a violation of the statute. The plaintiff filed his complaint on April 16, 2015. See Exh. S. Thus, he may recover only for violations occurring after April 16, 2012. As of that date, he was clearly acting as the stable manager. Accordingly, he *103 is not entitled to recover for any unpaid overtime that he may have earned as a stable hand prior to April of 2012.
C. G.L.c. 149, §148 — WAGE ACT
‘The Wage Act requires ‘every person having employees in his service’ to pay ‘each such employee the wages earned’ within a fixed period after the end of a pay period. G.L.c. 149, §148. The purpose of the Wage Act is to prevent the unreasonable detention of wages . . . The statute was intended and designed to protect wage earners from the long-term detention of wages by unscrupulous employers as well as protect society from irresponsible employees who receive and spend lump sum wages.” Melia v. Zenhire, Inc., 462 Mass. 164, 169-70 (2012). “An employer violates the weekly payment of wages statute by failing to pay an employee all wages due on the date of his discharge.” Quazi, 70 Mass.App.Ct. at 785.
In this case, it is undisputed that the plaintiff was paid his full “salary” of between $800 and $1,000 per week during his entire period of employment. The only shortfall which the plaintiff claims is the overtime to which he was allegedly entitled. Because I have ruled that he was an exempt employee under both the executive and administrative exemptions and therefore is not entitled to overtime pay, his claim under the Wage Act fails.
D. BREACH OF CONTRACT
‘To prevail on a claim for breach of contract, a plaintiff must demonstrate that there was an agreement between the parties; the agreement was supported by consideration; the plaintiff was ready, willing, and able to perform his or her part of the contract; the defendant committed a breach of the contract; and the plaintiff suffered harm as a result.” Bulwer v. Mount Auburn Hospital, 473 Mass. 672, 690 (2016).
The defendants are entitled to summary judgment as to Count 3 of the plaintiffs complaint. Count 3 alleges nothing more than the legal conclusion that the parties entered into an employment contract and the record does not support that averment. It is undisputed that the plaintiff did not have a written employment contract with the defendants and the record does not contain any evidence, even viewed in the light most favorable to the plaintiff, of a verbal contract with respect to overtime. The plaintiff argues that he and the defendants entered into a verbal agreement to the effect that he would be allowed to take hay and shavings from the defendants’ premises as partial compensation for the overtime that he was allegedly due. However, his own deposition testimony belies that claim. He testified that he never had any discussions with Mary Waller about overtime. See Exh. H, page 229. When he discussed the matter with Harvey Waller, Mr. Waller stated that, “he is not paying overtime,” and “they don’t have to pay overtime.” Id. at page 142 and 229. Thus, there was no meeting of the minds with respect to overtime pay, and the defendants never agreed to pay overtime. The parties made what the plaintiff calls “a deal,” pursuant to which he was permitted to take a bale of hay every day, but there is no indication that the hay was given to the plaintiff in lieu of overtime pay (which the defendants expressly denied having to pay). Id. at page 142-43. There is no evidence that the defendants ever breached that verbal agreement by denying the plaintiff the hay that he was promised. The summary judgment record reveals that the plaintiff has no reasonable expectation of proving that the defendants breached an employment contract.
ORDER
For the foregoing reasons, the defendant’s Motion for Summary Judgment is hereby ALLOWED.

 “[T]ypical management duties include interviewing, training, directing work, maintaining records, appraising work-performance, handling employee complaints, and apportioning work . . . [citing 29 C.F.R. §541.102]. If the employee also performs nonexempt work, he or she is not precluded from being an exempt employee. 29 C.F.R. §541.106(a).” Rooney, 577 F.Sup.2d at 526 (citation omitted). “The determining factor of the primary duly is not the amount of time spent on a particular aspect of an employee’s job. 29 C.F.R. §541.700(b). Rather, the ‘major emphasis’ in determining an employee’s primary duty should be on the ‘job as a whole.’ 29 C.F.R. §541.700(a), As such, employees spending less than fifty percent of their time on managerial aspects can nonetheless satisfy the primaiy duty requirement under other relevant facts of the case. 29 C.F.R. §541.700(b).” Id. See also In Re Family Dollar Litigation v. Family Dollar Stores, Inc., 637 F.3d 508, 517 (4th Cir. 2011) (fact that plaintiff who managed a retail store, spent 80%-90% of her time on manual, nonexempt labor did not prevent her from falling within the executive exemption because “she was performing management duties whenever she was in the store, even though she devoted most of her time to doing the mundane physical activities necessary for its successful operation”).

 The plaintiff argues that he cannot be exempt as an executive employee because he did not manage an “enterprise.” He claims the stable was maintained by the defendants merely as a hobby, not a profit-making business, and therefore does not qualify as an “enterprise” within the meaning of G.L.c. 151, §1A(3). I disagree. The plaintiff cites no case law for this strange proposition, and it seems to me to be coun-terintuitive that employers who reap profits from their efforts could take advantage of the executive exemption while employers who earn no profits could not. Moreover, in Rooney v. Town of Groton, supra, a police officer was determined by the court to fall within the executive exemption, even though he worked for a police department, which was obviously not a commercial, profit making enterprise.

 “As defined, ‘the exercise of discretion and independent judgment’ refers to ‘the comparison and the evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered.’ 29 C.F.R. §541.202(a). ‘[M]atters of significance’ refers to the level of importance or consequence of the work performed . . . This question involves the primary duties discussed above and then asks a qualitative question as to the role that the employee played in exercising those responsibilities.” Rooney, 577 F.Sup.2d at 534 (citation omitted; internal quotation marks omitted).